IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TONJA HENSON,                                    *
                                                 *
                    Plaintiff,                    *
                                                 *
         vs.                                      *          Civil Action No.   ADC-23-0004
                                                 *
BALTIMORE CITY BOARD OF SCHOOL                   *
COMMISSIONERS,                                   *
                                                 *
                    Defendant.                    *
                                                 *
         * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM OPINION

Defendant Baltimore City Board of School Commissioners ("BCBSC") moves this Court

to dismiss Plaintiff Tonja Henson's Complaint. ECF No. 9.[1] After considering Defendant's Motion

and the responses thereto (ECF Nos. 9, 12, 14) the Court finds that no hearing is necessary. Loc.R.

105.6 (D.Md. 2021). For the reasons stated herein, Defendant's Motion is GRANTED.

### Factual and Procedural Background

When reviewing a motion to dismiss, this Court accepts as true the facts alleged in the

challenged complaint. *See Williams v. Kincaid*, 45 F.4th 759, 765-66 (4th Cir. 2022). Plaintiff was

hired by BCBSC as a substitute teacher on October 4, 2001. ECF No. 1 at ¶ 9. She was

subsequently promoted to Staff Associate and was assigned to the Vivien T. Thomas Medical Arts

Academy ("Vivien") during the 2020-2021 academic year. *Id.* at ¶¶ 10-11. In December 2020,

Plaintiff applied for a reasonable accommodation due to her increased risk of severe illness should

she contract COVID-19. *Id.* at ¶ 15. Plaintiff suffers from congestive heart failure, high blood

---

[1] On January 9, 2023, this case was assigned to United States Magistrate Judge A. David
Copperthite for all proceedings in accordance with Standing Order 2019-07. ECF No. 3. All parties
voluntarily consented in accordance with 28 U.S.C. § 636(c). ECF No. 7.

1

pressure, diabetes, and seizures and has undergone brain surgery which resulted in the permanent insertion of a metal plate into her head. *Id.* at ¶ 13. On December 17, 2020, BCBSC granted an accommodation which allowed her to work from home Mondays through Thursdays and in a private office at Vivien on Fridays. *Id.* at ¶ 16; ECF No. 14-2 at 2.

In or around March 2021, Plaintiff began receiving calls and messages expressing dissatisfaction with her absence from Vivien. ECF No. 1 at ¶ 18. Around this time, one of Plaintiff's colleagues, Ms. Sarah Dexter-Thornton, made a derogatory comment to another colleague about the plate in Plaintiff's head after Plaintiff made an on-the-job error. *Id.* at 19. Ms. Wanda Jackson, an assistant at Vivien, also refused to give Plaintiff a key to her private workspace because, in her words, Plaintiff "wouldn't remember" if she did. *Id.* at ¶ 37. On a cold day later that month, Plaintiff's co-workers forced her to stand outside for "an extended period of time" as they ignored her knocking and refused to open a locked door for her. *Id.* at ¶ 38.

In addition to the comments about Plaintiff's disability, Vivien's Principal, Stephanie Farmer, placed a statute of a "Buddha" near Plaintiff's workstation. *Id.* at ¶ 20. As a practicing Baptist pastor, Plaintiff found the "inclusion of [this] religious iconograph" offensive. *Id.* at ¶¶ 20; 53. Although Plaintiff informed Principal Farmer that she found the "Buddha" inappropriate, Principal Farmer again placed the object near Plaintiff's other workstation several weeks later. *Id.*

Near the end of March 2021, Principal Farmer received a letter from one of Plaintiff's colleagues alleging that Plaintiff no longer wished to work at Vivien. *Id.* at ¶ 21. Contrary to the letter, Plaintiff informed Principal Farmer that she steadfastly opposed any transfer. *Id* at ¶ 23. The following month, Plaintiff reported to Principal Farmer that her co-workers were discriminating against her based on her disability. *Id.* at ¶ 22. In response, Principal Farmer informed Plaintiff that, in her view, Plaintiff "no longer wished to remain at Vivien and indicated that she had

2

discussed transferring [Plaintiff] to another school." *Id.* at ¶ 23. Plaintiff subsequently met with

Jacque Hayden, BCBSC's Executive Director of the Community Learning Network, and reiterated

that she opposed any transfer and believed that she was being harassed and discriminated against

due to her religion and disability. *Id.* at ¶ 24. After this meeting, Principal Farmer re-distributed

some of Plaintiff's work-related responsibilities and informed her colleagues not to report to

Plaintiff on these new assignments. *Id.* at ¶25.

On April 30, 2021, Principal Farmer informed Plaintiff that her position at Vivien was

being "surplussed" for the 2021-2022 school year. *Id.* at ¶ 26. Plaintiff was ultimately transferred

to Frederick Douglas High School for the 2021-2022 academic year where she continued as a Staff

Associate. *Id.* at ¶ 27. In October 2021, Plaintiff contacted the Equal Employment Opportunity

Commission ("EEOC") about filing discrimination and harassment claims against BCBSC.[2] ECF

No. 12-2 at 2. Thereafter, she completed a pre-charge inquiry form, which allows the EEOC to

"determine if [her] concerns are covered by the employment laws [it] enforce[s]." ECF No. 14-1

at 2. Plaintiff ultimately filed a charge of discrimination with the Maryland Commission on Civil

Rights on February 27, 2022. ECF No. 9-2 at 2. The charge was amended on July 29, 2022 and

the EEOC issued a right to sue letter on October 5, 2022. ECF Nos. 1 at ¶ 8; 9-3 at 3.

On January 3, 2023, Plaintiff filed this lawsuit against Defendant alleging discrimination

---

[2] The parties have attached various documents to their motions and responses relating to the issue
of exhaustion of administrative remedies. Defendant attaches to its Motion Plaintiff's Charge and
Amended Charge of Discrimination. ECF Nos. 9-2; 9-3. Plaintiff has attached her EEOC "charge
detail inquiry" to her Response. ECF No. 12-2. And, Defendant attaches Plaintiff's "Pre-Charge
Inquiry" to its Reply. ECF No. 14-1. Courts are permitted to consider documents attached to a
motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and
when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics
Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon
Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Here, neither party challenges the authenticity
of these documents, and the Court finds that they are integral to the Complaint as Plaintiff
specifically alleges that she "exhausted her administrative remedies." ECF No. 1 at ¶ 8.

and retaliation in violation of the Americans with Disabilities Act (Counts I-II) and discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 (Counts III-IV). ECF No. 1. Defendant filed the present Motion to Dismiss on February 8, 2023. ECF No. 9. Plaintiff responded in opposition February 22, 2023 and Defendant replied on March 8, 2023. ECF Nos. 12, 14.

**DISCUSSION**

**A.     Standard of Review**

The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the Complaint, not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Upon reviewing a motion to dismiss, the Court accepts "all well-pleaded allegations as true and construe[s] the facts in the light most favorable to the plaintiffs." *In re Willis Towers Watson plc Proxy Litig.*, 937 F.3d 297, 302 (4th Cir. 2019) (citations omitted). However, it does not accept as true legal conclusions couched as factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The Complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when Plaintiff "pleads factual content that allows the court to draw the reasonable inference that [Defendant] is liable for the misconduct alleged." *Id.* An inference of a "mere possibility of misconduct" is not sufficient to support a plausible claim. *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

4

**B.**   **Exhaustion of Administrative Remedies**

1. The Pre-Charge Inquiry

Defendant argues that the allegations in Plaintiff's complaint are time barred as they occurred more than 300-days before she filed her EEOC charge. ECF No. 9-1 at 7, 10-11. Specifically, because Plaintiff filed her charge of discrimination on February 27, 2022, Defendant asserts that the Court cannot consider the events that allegedly occurred between March and April 2021 as the limitations period extends only to May 3, 2021. *Id.* at 2. While Plaintiff acknowledges that the charge was not filed within 300-days of this conduct, she argues that the Court should calculate the 300-day period from December 28, 2021—the date that the EEOC received her pre-charge inquiry. ECF No. 12-1 at 6.

Both Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act ("ADA") require that plaintiffs file charges of discrimination with the EEOC, or the state equivalent, before filing suit in federal court. *See* 42 U.S.C. § 2000e-5(e)(1), (f)(1); 42 U.S.C. § 12117(a). *See also Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012). Generally, such a charge must be filed within 180 days "after the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1); *Williams v. Giant Food, Inc.*, 370 F.3d 423, 428 (4th Cir. 2004). However, in deferral states such as Maryland, this time period is extended to 300 days. *Valderrama v. Honeywell Tech Sol., Inc.*, 473 F.Supp.2d 658, 662 n.4 (D.Md. 2007).

The term "charge" is not defined in either Title VII or the ADA. *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 112 (2002). The statutes and their corresponding regulations do, however, identify certain elements that are necessary for a document to constitute a charge. *Shaukat v. Mid Atlantic Pro., Inc.*, TDC-20-3210, 2021 WL 5743909, at *3 (D.Md. Nov. 30, 2021). The EEOC requires that charges be "in writing under oath or affirmation." 42 U.S.C. § 2000e-5(b). However,

an unverified charge may later be cured by a verified amended charge that relates back to the unsworn charge. 29 C.F.R. § 1601.12(b). The charge must also contain: (1) the full name and contact information for the claimant; (2) the full name and contact information of the person against whom the charge is made; (3) "[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices"; (4) "the approximate number of employees of the respondent employer"; and (5) "[a] statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency." 29 C.F.R. § 1601.12(a). And, importantly, to constitute a "charge," the document must "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008).

In *Shaukat v. Mid Atlantic Professionals, Inc.*, this Court found that a pre-charge inquiry did not qualify as a charge of discrimination and that the submission of this form did not toll the running of the 300-day filing period. TDC-20-3210, 2021 WL 5743909, at *3. Although the EEOC's pre-charge inquiry form did satisfy several requirements of 29 C.F.R. § 1601.12(a), the Court reasoned that it "contains very limited facts," "is not verified," and "does not satisfy the *Holowecki* standard that it be 'reasonably construed as a request for the agency to take remedial action to protect the employee's rights.'" *Id.* (quoting *Holowecki*, 552 U.S. at 402). More importantly, the Court explained that the pre-charge inquiry form had, on every page, a disclaimer that the form did not constitute a charge of discrimination. *Id. See also Merchant v. Prince George's Cnty.*, 948 F.Supp.2d 515, 521-23 (D.Md. 2013) (finding that a disclaimer notified the

6

plaintiff that the "questionnaire itself was not, in fact, a charge"). Further, the last page of the form had instructions on how to properly file a charge of discrimination should the plaintiff wish to proceed with the claim. *Id.*

Returning to this case, Plaintiff argues that her December 28, 2021 pre-charge inquiry form qualifies as a "charge." ECF No. 12-1 at 5-6. However, this form is identical to the form that the *Shaukat* Court found to be insufficient as a charge of discrimination. As in *Shaukat*, Plaintiff is correct that the pre-charge inquiry does satisfy *several* of the requirements of 42 U.S.C. § 2000e-5 and 29 C.F.R. § 1601.12(a) as the form is in writing, it lists both parties' addresses and contact information, and it estimates (albeit incorrectly) how many employees Defendant has. ECF No. 14-1. However, the form contains very little detail, is not verified, and is not signed. *Id.* It also does not comply with the *Holowecki* standard that it be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights." 552 U.S. at 402. In fact, the form clearly states that it is used exclusively to help the EEOC "determine if [the plaintiff's] concerns are covered by the employment discrimination laws [it] enforce[s]." ECF No. 14-1 at 2. More importantly, each of the form's pages indicate, in capital letters and bold font, that **"THIS PRE-CHARGE INQUIRY IS NOT A CHARGE OF DISCRIMINATION."** ECF No. 14-1. On the final page, the pre-charge inquiry states: "Please note: You must file a charge of job discrimination within 180 days from the day you knew about the discrimination . . . . **This Pre-Charge inquiry is not a charge.** If you would like to file a charge of discrimination immediately, contact the EEOC on the cover letter." *Id.* at 5.

Considering all of these factors, the Court finds that the pre-charge inquiry fails to qualify as an EEOC charge of discrimination and that completing the form did not toll Plaintiff's 300-day limitations period. In addition to the substantive omissions, the disclaimers on every page of the

7

document make it abundantly clear that completing the form is insufficient to submit a charge of employment discrimination. Accordingly, the Court must determine whether Plaintiff's February 27, 2022 formal charge of discrimination was timely filed. ECF No. 9-2 at 2.

2. The Formal Charge of Discrimination

"The key to determining whether a discrimination complaint is timely is to determine whether it is based upon discrete acts of discrimination or upon a hostile work environment theory." *Powell v. Susdewitt Mgmt., LLC*, No. CCB-20-2343, 2021 WL 4420999, at *3 (D.Md. Sept. 27, 2021) (citing *Nat'l R.R. Pass Corp. v. Morgan*, 536 U.S. 101, 113-15 (2002)). Here, Plaintiff plainly proceeds under a theory of hostile work environment. ECF No. 1 at ¶¶ 44, 61. Under the continuing violation theory, the Supreme Court has held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory period, is permissible for the purposes of assessing liability, *so long as an act contributing to that hostile environment takes place within the statutory time period.*" *Nat'l R.R. Pass Corp.*, 536 U.S. at 105. Importantly, "unlike a discrete act of Title VII discrimination, the 'anchoring' act [in a hostile work environment claim] need not rise to the level of a Title VII violation itself as long as it contributes to the hostile work environment." *Powell*, 2021 WL 4420999, at *3 (quoting *Edwards v. Murphy-Brown, LLC*, 760 F.Supp.2d 607, 620 (E.D.Va. 2011)).

Here, Plaintiff filed her official charge of discrimination on February 27, 2022. ECF No. 9-2. To survive dismissal, one or more of the events creating or contributing to the alleged hostile work environment must have occurred between the date of filing and the 300 days prior—May 3, 2021. However, Plaintiff alleges in her complaint that the hostile conduct took place between March and April 2021 and culminated on April 30, 2021 when Principal Farmer told her that she "had been surplussed" for the 2021-2022 academic year. *Id.* at 17-26. Accordingly, none of the

8

actions that Plaintiff alleges created or contributed to the hostile work environment occurred within the limitations period. *See Valderrama*, 473 F.Supp.2d at 662 n.4. Plaintiff has, therefore, not met her burden of establishing that she exhausted her administrative remedies, and the Court finds that dismissal with prejudice is appropriate.

**C.   The Merits**

Assuming *arguendo* that Plaintiff's charge of discrimination was timely filed, Defendant argues that Plaintiff has failed to state claims of: (1) failure to accommodate in violation of the ADA; (2) hostile work environment in violation of the ADA and Title VII; and (3) retaliation in violation of the ADA and Title VII. ECF Nos. 9-1, 14. I agree and address each of these arguments in turn.

1.    Failure to Accommodate Under the ADA

Defendant argues that it reasonably accommodated Plaintiff's risk of severe illness should she contact COVID-19 by allowing her to work remotely four days a week and in a private office on-site one day a week. ECF No. 9-1 at 8. Conversely, Plaintiff argues that Defendant did not adhere to the granted accommodation as it forced her to perform tasks outside of her private office on the days that she was working on-site. ECF No. 12-1 at 8. To make out a failure to accommodate case under the ADA, a plaintiff must prove "(1) that she had a disability within the statutory meaning; (2) that the employer knew of her disability; (3) that a reasonable accommodation would permit her to perform the essential functions of the position; and (4) that the employer refused to make the accommodation." *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 959 (4th Cir. 2021) (quoting *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013)).

In this case, the Court finds that Defendant granted, and subsequently adhered to, a reasonable accommodation for Plaintiff. Initially, Plaintiff's complaint plainly states that she was

granted a reasonable accommodation: On December 17, 2020, *a reasonable accommodation was granted*[.]" *Id.* (emphasis added). ECF No. 1 at ¶ 16 (emphasis added). Plaintiff's allegation that Defendant violated this accommodation by "ordering her to perform duties that took her out of her private office space" is also unconvincing as the language of the accommodation does not specify that she must remain in the office for the entirety of the days that she is on-site. *See* ECF Nos. 12-1 at 8; 14-2.[3] Even if Defendant did violate the accommodation, Plaintiff would be precluded from bringing the claim as she has not pleaded that she informed Defendant that the accommodation was, in her view, being violated or that she needed a more specific accommodation. *See Tangires v. Johns Hopkins Hosp.*, 79 F.Supp.2d 587, 597 (D.Md. 2000) ("An employee is precluded from bringing suit under the ADA for failure to accommodate if such employee has *failed to inform the employer of his or her need for a specific accommodation*." (emphasis added)). Finally, Plaintiff has failed to plead that she could perform the essential functions of her job under her more restrictive interpretation of the reasonable accommodation. *See Searls v. Johns Hopkins Hosp.*, 158 F.Supp.3d 427, 435 (D.Md. 2016) ("The reasonableness of an accommodation depends on whether it enables the employee to perform the essential functions of the job in question." (citations omitted)).

In sum, the Court finds that Plaintiff was granted a reasonable accommodation and that she did not inform Defendant that the accommodation was being violated or that she needed a more restrictive accommodation. Accordingly, even if Plaintiff had timely filed her charge of discrimination, the Court would grant dismissal of Plaintiff's failure to accommodate claim.

---

[3] Defendant has attached a copy of Plaintiff's reasonable accommodation to its Reply. ECF No. 14-2. In her Complaint, Plaintiff describes her accommodation and the process that she undertook to receive it. ECF No. 1 at ¶¶ 15-16. Therefore, like the other documents attached to Defendant's filings, the Court will consider this document as it is integral to the Complaint.

2.    Hostile Work Environment Under the ADA and Title VII

Defendant next argues that Plaintiff has failed to state a claim for hostile work environment based on disability and/or religion as she has failed to plead that the alleged harassment was severe or pervasive. ECF No. 14 at 7-8. I agree. Hostile work environment claims are cognizable under Title VII and the ADA. *See Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001) ("[W]e have little difficulty in concluding that the ADA, like Title VII, creates a cause of action for hostile work environment harassment."). "A hostile [work] environment exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). Therefore, to prevail on a hostile work environment claim under the ADA and Title VII, a plaintiff must show that there is "(1) unwelcome conduct; (2) that is based on the plaintiff's [disability or religion]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Id.* (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011)); *Fox*, 247 F.3d at 177.

The United States Court of Appeals for the Fourth Circuit has "recognized that plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). To satisfy this element, plaintiffs must show that they "did perceive, and a reasonable person would perceive, the environment to be abusive or hostile." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 208 (4th Cir. 2019). In determining whether the alleged conduct was objectively severe or pervasive, courts look at "all of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

11

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Sunbelt Rentals, Inc.*, 521 F.3d at 315 (citations omitted). Allegations of "simple teasing, offhand comments, and isolated incidents (unless extremely serious)" are generally insufficient. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "Nor can a plaintiff state a hostile work environment claim by alleging mere 'rude treatment by coworkers, callous behavior by . . . supervisors' or '[i]ncidents that would objectively give rise to bruised or wounded feelings.'" *Renibe v. Univ. of Md., College Park*, No. DKC-22-0618, 2023 WL 2585664, at *9 (D.Md. March 21, 2023) (quoting *Perkins*, 936 F.3d at 208 (cleaned up)).

Here, Plaintiff's Complaint first alleges that she received "various messages and calls inquiring about her working status, and/or expressing dissatisfaction with her absences resulting from her conditions." ECF No. 1 at ¶ 18. These complaints are, however, too speculatory and conclusive for the Court to consider. Plaintiff does not offer any concrete examples of the severity of the messages or who sent them. *Id.* More importantly, she has failed to plead that the senders knew about her disabilities or knew that her disabilities caused her absence from Vivien. Accordingly, the Court finds that these allegations are unavailing. *See Butts v. Encore Marketing Intern*, No. PJM-10-3244, 2012 WL 3257595, at *4 (D.Md. Aug. 7, 2012) (finding that statements that "demeaned [the plaintiff's manhood]" and "humiliated him" were too "vague and conclusory to push his claim across the threshold of plausibility").

Next, Plaintiff alleges that her colleagues, Ms. Dexter-Thorton and Ms. Jackson, separately made remarks insinuating that the plate in her head caused her to be inattentive and forgetful at work. ECF No. 1 at ¶¶ 19, 36-37. Plaintiff also alleges that on a cold day in April 2021, several colleagues ignored her continuous knocking and forced her to stand outside in the cold after she accidentally locked herself out of the building. *Id.* at ¶ 38. While these alleged incidents may have

been hurtful to Plaintiff, they fall well short of the high "severe or pervasive" bar. These actions are akin to offensive utterances or offhanded comments—which are not actionable—and bear no resemblance to the "verbal assaults of the most vulgar and humiliating sort" that this Court has previously found violate Title VII and the ADA. *Anderson v. G.D.C., Inc.*, 281 F.3d 452, 459 (4th Cir. 2002). This alleged conduct was also exceedingly isolated as Plaintiff alleges only three actions, all by different people, in the three-month span covered in the Complaint.

Finally, Plaintiff alleges that Principal Farmer discriminated against her religion as she twice placed a Buddha statue near her workstation. ECF No. 1 at ¶¶ 20, 52. While Principal Farmer's decision to place the Buddha near Plaintiff's workstation is puzzling, it simply does not rise to the level of severe. *Compare with Powell v. Susdewitt Mgmt., LLC*, No. CCB-20-2343, 2021 WL 4420999, at *5 (D.Md. Sept. 27, 2021) ("The treatment [that the plaintiff] endured was not merely rude or boorish, but includes . . . commentary highly demeaning to [the plaintiff] on account of her sex and religion."). Nor can it be said that this conduct was pervasive as Plaintiff has alleged only two isolated incidents occurring over the span of several months.

All told, Plaintiff pleads two instances of different coworkers making offhanded comments to her, one instance of her colleagues ignoring her requests to open a locked door, and two instances of Principal Farmer placing a Buddha statue near her workplace. Considering these allegations in their totality, the Court finds that the alleged conduct fails to rise to the level of severe or pervasive. *See Sunbelt Rentals, Inc.*, 521 F.3d at 315 ("[W]hen determining whether the harassing conduct was objectively severe or pervasive, we must look at all the circumstances[.]"). As the Fourth Circuit has explained: "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe of pervasive standard." *Id.* Accordingly, even if Plaintiff had timely filed her

charge of discrimination, the Court would find that dismissal of her hostile work environment claims (Counts I & III) is appropriate.

3.     Retaliation under Title VII and the ADA

Finally, Defendant argues that Plaintiff's retaliation claims fail as she has not pleaded that she suffered an adverse job action. ECF No. 14 at 11. In particular, it alleges that Plaintiff's lateral transfer from Vivien to Frederick Douglas High School does not constitute an adverse action as Plaintiff was neither demoted nor was her salary reduced. *Id.* I agree. Retaliation claims brought under Title VII and the ADA are analyzed under "analogous" standards. *Laird v. Fairfax Cnty. Va.*, 978 F.3d 887, 893 n.5 (4th Cir. 2020). As with discrimination claims, plaintiffs "may prove these violations through direct and indirect evidence of retaliatory animus, or through the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Foster v. Univ. Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015); *see also Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1228 (4th Cir. 1998) ("The series of proofs and burdens outlined in *McDonnell Douglas* apply to retaliation claims."). Under the burden-shifting framework, a plaintiff must first offer a prima facia case of retaliation. *Walton v. Harker*, 33 F.4th 165, 177 (4th Cir. 2022). To establish a prima facia case of retaliation, a plaintiff must show: "(i) 'that [she] engaged in protected activity,' (ii) 'that [her employer] took an adverse action against [her],' and (iii) 'that a causal relationship existed between the protected activity and the adverse employment activity.'" *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 654-55 (4th Cir. 2021) (quoting *Foster*, 787 F.3d at 250 (alterations in *Foster*)).

To satisfy the third element of a prima facie case of retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a

charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). "Because employees are protected 'not from all retaliation, but from retaliation that produces an injury or harm,' materially adverse actions do not include 'trivial harms.'" *Cepada v. Bd. of Educ. of Balt. Cnty.*, 974 F.Supp.2d 772, 788 (D.Md. 2013) (quoting *Burlington*, 548 U.S. at 67-69). In the context of teachers and education administrators, this Court has found that "an involuntary transfer to a new school without loss of pay or status is generally not considered a materially adverse employment action." *Cepada*, 974 F.Supp.2d at 788 n.53; *see also Holleman v. Colonial Heights Sch. Bd.*, 854 F.Supp.2d 344, 353-55 (E.D.Va. 2012) (same).

In the instant case, Plaintiff argues in her response that the "involuntary nature of the lateral transfer may still be considered an adverse action." ECF No. 12-1 at 11. In support of this proposition, Plaintiff relies exclusively on *Laird v. Fairfax County*, 978 F.3d 887 (4th Cir. 2020). There, the plaintiff *requested* and was *granted* a transfer but later filed suit alleging, among other things, that the transfer constituted an adverse job action as she was "effectively demoted because of her disability and because she pursued a complaint of disability discrimination." *Id.* at 894. The Fourth Circuit held that the plaintiff had not suffered an adverse job action and explained that "[i]f an employee voluntarily requests a transfer, and the employer agrees to it, there is no actionable adverse action." *Id.* (citing *Simpson v. Borg-Warner Auto., Inc.*, 196 F.3d 873, 876 (7th Cir. 1999)). The Court, however, did not analyze if/how this analysis changes if the underlying transfer was involuntary. *Id.* Accordingly, I find the reasoning of *Laird* inapposite to the instant case.

Here, Plaintiff relies exclusively on the involuntary nature of her transfer to support her argument that she suffered an adverse job action. This Court has, however, held that a transfer, even if involuntary, does not necessarily alter the material conditions of an employee's

employment. *See Cepada*, 974 F.Supp.2d at 788 n.53. In her Complaint, Plaintiff has altogether failed to allege that her transfer altered her job title, pay, benefits, or responsibilities. ECF No. 1 at ¶¶ 26-27; 46-50; 63-74. Accordingly, while her transfer to a new school may have been inconvenient or embarrassing, Plaintiff has failed to show that it altered the material terms of her employment. As the Fourth Circuit has explained, to be materially adverse the action "must result in 'some *significant detrimental effect*,' requiring more than a position that is 'less appealing' to the plaintiff." *Laird*, 978 F.3d at 893 (quoting *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (emphasis in *Laird*)). Therefore, Plaintiff has failed to plead a prima facia case of retaliation. As such, even if her charge of discrimination was timely filed, the Court would still find that dismissal of her retaliation claims (Counts II & IV) is appropriate.

**D.      Plaintiff's Request to Amend**

In her response, Plaintiff requests that the Court grant her leave to amend her Complaint. ECF No. 12-1 at 12. The Court, however, finds that "[s]uch an informal request to amend does not comport with the Federal Rules or the Local Rules of this Court." *Pinson v. Maryland*, GLR-20-1155, 2021 WL 4772919, at \*4 (D.Md. Oct. 12, 2021) (citing Fed.R.Civ.P. 7(b); Local Rule 103.6 (D.Md. 2021)). *See also Hall v. JPMorgan Chase Bank, N.A.*, No. JKB-19-2510, 2020 WL 1452132, at \*8 (D.Md. Mar. 25, 2020) ("Plaintiff did not file a motion or submit a proposed amended complaint; he merely expressed his wish to amend in his opposition brief. The Court will deny his request as procedurally improper."). Plaintiff is correct that she was entitled to amend her Complaint "as a matter of course" within 21 days after service of Defendant's 12(b)(6) Motion to Dismiss. Fed.R.Civ.P. 15(a)(1)(B). Despite this opportunity, Plaintiff simply failed to file an amended complaint by the March 1, 2023 deadline. Alternatively, Plaintiff could have sought consent from Defendants or moved this Court for leave to amend her Complaint. Fed.R.Civ.P.

16

15(a)(2); Fed.R.Civ.P. 7(b). Any amendment, however, would likely be futile as Plaintiff failed to timely file her EEOC charge of discrimination. *See Naves v. Maryland*, No. TJS-18-3974, 2021 WL 765686, at *3 (D.Md. Feb. 26, 2021) ("If [the plaintiff] filed another amended complaint, it would still be dismissed for untimeliness."). Accordingly, the Court will deny Plaintiff's request to amend her Complaint.

**CONCLUSION**

For the reasons set forth in this Memorandum Opinion, Defendant's Motion (ECF No. 9) is GRANTED. A separate Order will follow.

Date: _18 April 2023_

_____
A. David Copperthite
United States Magistrate Judge

17